UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELE B. PARR, | ) | Case No.: 5:09 CV 1041 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| DIEBOLD, INCORPORATED, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Plaintiff Michele B. Parr ("Plaintiff") brings the instant action against Defendant Diebold, Incorporated ("Defendant"), claiming she is entitled to retirement benefits her late husband accrued during his employment with Defendant corporation.  Currently pending before this court are:  (1) Defendant's Motion to Strike Portions of Plaintiff's Affidavit and Motion for Summary Judgment (ECF No. 17); (2) Plaintiff's Motion for Summary Judgment (ECF No. 14); and (3) Defendant's Motion for Judgment on the Administrative Record (ECF No. 18).  For the reasons set forth below, the court grants Defendant's Motion to Strike Portions of Plaintiff's  Affidavit and Motion for Summary Judgment (ECF No. 17), denies Plaintiff's Motion for Summary Judgment (ECF No. 14), and grants Defendant's Motion for Judgment on the Administrative Record (ECF No. 18).

### I. FACTS AND PROCEDURAL HISTORY

Harry Parr ("Mr. Parr") began working for Defendant in August of 1966.  (Compl. ¶ 5.) Hired as a Vice President and Controller, he was later promoted to Senior Vice President-Finance and became Chief Administrative Officer.  (Personnel Announcement, Wearstler, ECF No. 18-7 at

6, 8.) In 1989, The Wyatt Company ("Wyatt") contacted Mr. Parr with respect to a supplemental executive retirement plan ("SERP") for Diebold executives. (ECF No. 18-4 at 2-4.) In his capacity as Senior Vice President of Finance and Chief Administrative Officer, Mr. Parr received draft copies of the SERP on November 9, 1989, and November 20, 1989 (Scheurer Letter, cc Parr, ECF No. 18-4 at 5, 48.) On both of these copies, the definition of "Spouse" was unchanged: "'Spouse' shall mean the surviving spouse of a Participant at the time of his death provided the Participant and such spouse were married at least one year prior to the earlier of the Participant's death or date of retirement." (*Id.*)

Mr. Parr corresponded with Wyatt and other Diebold executives, questioning the computation methods contained in the SERP and was informed and involved throughout the process. (Inter-Office Memo from Salasek to Parr and Seitzinger, ECF No. 18-4 at 72.) Mr. Parr retired from Diebold on January 4, 1991. (Compl. ¶ 7.) Plaintiff married Mr. Parr on March 16, 1996, and they continued to be married until Mr. Parr's death on January 6, 2009. (*Id.* at ¶¶ 8, 10.) It is uncontested that Plaintiff was not married to Mr. Parr on the date of his retirement.

Plaintiff, through her son, Maxwell Deuble, contacted Defendant after Mr. Parr's death on January 15, 2009. (Deuble Fax, ECF No. 18-8 at 2.) Mr. Deuble informed Defendant of Plaintiff's wish to participate in the SERP benefits. (*Id.*) Defendant sent a letter on January 22, 2009, stating that Plaintiff was not eligible for the benefits as she was not married to Mr. Parr for at least a year prior to Mr. Parr's retirement. (ECF No. 18-9 at 2.) Plaintiff then pursued the matter through an attorney, and Defendant again denied eligibility under the plan terms on March 9, 2009. (ECF No. 18-10 at 2.) After, Plaintiff appealed the denial of benefits under the SERP, which was denied in a letter dated April 29, 2009. (ECF No. 18-2 at 2-3.) Plaintiff then filed her Complaint with this

court on May 6, 2009, and subsequently moved for Summary Judgment on November 23, 2009. (ECF Nos. 1, 14.)

Plaintiff challenges the plan administrator's decision to deny SERP benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶ 1.) Plaintiff moved the court for summary judgment in its favor (ECF No. 14). Defendant subsequently moved to strike portions of Plaintiff's affidavit which allegedly includes information not available to the plan administrator when considering Plaintiff's initial claim. (Def.'s Mot. to Strike, ECF No. 17.) Defendant also moved for Judgment on the Administrative Record and filed an opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 18.)

## II. LAW AND ANALYSIS

### A. Motion to Strike

#### 1. Standard

The court first addresses Defendant's Motion to Strike certain portions of Plaintiff's affidavit and Motion for Summary Judgment. In ruling on a motion to strike, a court must "'use a scalpel, not a butcher knife'" to only strike portions that are not admissible under Federal Rule of Civil Procedure 56(e). *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (citing *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007)). Affidavits may only "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1). Accordingly, a court may only strike the inadmissible portions of an affidavit rather than the whole.

Sixth Circuit precedent shows that in reviewing a denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), a district court may only consider the information that was before the plan administrator ("administrative record") at the time it exercised

its discretion in a given case. *Garst v. Wal-Mart Stores, Inc.*, 30 F. App'x 585, 593 (6th Cir. 2002); *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005); *Szoke v. UPS of Am., Inc.*, No. 1:03CV1628, 2006 U.S. Dist. LEXIS 69325 at *11-12 (N.D. Ohio Sept. 26, 2006).

### 2. Legal Analysis

Defendant claims that Plaintiff's affidavit and Motion for Summary Judgment contain information not before the plan administrator when determining Plaintiff was not entitled to SERP benefits. (Def.'s Mot. to Strike, ECF No. 17 at 4-5.) Defendant has presented the affidavit of Dr. Sheila M. Rutt, Vice President, Chief Human Resources Officer for Diebold, listing the documents that were in the administrative record in Plaintiff's case. (ECF No. 18-1 at 2-3.) The court finds that Plaintiff in fact has included matters in her affidavit that were not in the materials considered by the plan administrator. (Def.'s Mot. for Judg. on Admin. Record, ECF No. 18 at 8-9.) Specifically, Plaintiff alleges in her affidavit that Mr. Parr requested retirement documents from Diebold but only received the summary plan description ("SPD"), Mr. Parr met with an attorney for estate planning advice, an unnamed attorney advised Mr. Parr that Plaintiff would receive post-retirement death benefits, Mr. Parr was not aware of the definition of "Spouse" in the Plan, Plaintiff and Mr. Parr assumed that Plaintiff was eligible as a spouse, and Plaintiff was 62 years old and had insufficient income. (Pl's. Aff., ¶¶ 3-8, 11-12, 19-20.) None of this information was in the administrative record. (Def.'s Mot. to Strike, ECF No. 17, at 3-4.) Plaintiff also references these averments in her affidavit in her Motion for Summary Judgment. (ECF No. 14.) To the extent Plaintiff relies on them, they cannot now be considered. *University Hosps.*, 202 F.3d at 845 n.2 (citing *Wilkins*, 150 F.3d at 620). It is not the role of this court to function as a "substitute plan administrator[]." *Perry v. Simplicity Eng'g, Div. Of Lukens Gen. Indus.*, 900 F.2d 963, 966 (6th Cir. 1990). To hold

-4-

otherwise would frustrate the policy behind ERISA of promoting resolution of claims at the administrative stage.

The court hereby grants Defendant's Motion to Strike paragraphs 3-8, 11-12, and 19-20 of Plaintiff's affidavit, as well as paragraphs 3-4, the third and fourth sentences[1] of paragraph 5, paragraph 9, the last two sentences of paragraph 15, and paragraph 16 of Plaintiff's Motion for Summary Judgment.

### B. Summary Judgment

### 1. Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a

---

[1] Although Defendant's Motion to Strike references the second and third sentences of paragraph 5 of Plaintiff's Motion for Summary Judgment, the court notes that in fact sentences three and four of paragraph 5 reference the inadmissible portions of Plaintiff's affidavit.

preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must –by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

When the ERISA standard is applied in the context of a motion for summary judgment where the plan administrator acts with discretion, a court must decide whether a genuine issue of material fact exists as to whether the administrative decision was arbitrary or capricious. *Szoke*, 2006 U.S. Dist. LEXIS 69325 at *16 (quoting *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)).

### 2. Legal Analysis

Plaintiff points to language in the SPD issued by Defendant describing the SERP which states in pertinent part:

> If you die while you are receiving a benefit from the Supplemental Plan . . . your surviving spouse will be eligible for a Post-Retirement Death Benefit. However, *you and your spouse must have been married throughout the one-year period ending on the date of your death* for your spouse to qualify for this benefit.

(ECF No. 18-6 at 7) (emphasis added.) Plaintiff claims this language conflicts with the definition of "spouse" in the plan itself, which states:

> 'Spouse' shall mean the surviving spouse of a Participant at the time of his death provided the Participant and such spouse were married at least one year prior *to the earlier of the Participant's death or date of retirement*."

(ECF No. 18-3 at 6) (emphasis added.)

Sixth Circuit law states that when a plan participant receives only a copy of the SPD, that language is controlling when in conflict with the language of the plan. *Edwards v. State Farm Mut. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). However, the Sixth Circuit has also held that the *Edwards* standard requires more than inconsistency, but rather a direct conflict for the SPD language to control and is only applied "where the plaintiff had received only a summary description and not

-7-

the plan document." *Valeck v. Watson Wyatt & Co.*, 92 F. App'x 270, 272 (6th Cir. 2004). Additionally, ambiguous language in an SPD "should not be permitted to trump unambiguous language in the plan itself . . ." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 938 (6th Cir. 1996). Indeed, when a participant has access to both the plan and the SPD, "courts must give effect to the unambiguous terms of the plan." *Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1379 (6th Cir. 1996) ("The Pauley Plaintiffs cite to no authority, and we have found none, where a plan summary which is merely ambiguous trumps unambiguous plan language. Moreover, unlike in *Edwards*, each of the Pauley Plaintiffs received the SPD and Plan Document as a single package, and therefore had access to the relevant Plan language.").

Here, Mr. Parr was an executive at Diebold who was involved in the drafting and implementation of the SERP. (ECF No. 18-4.) In fact, Mr. Parr was sent a proposed version of the SERP on November 8, 1989 by Philip Katzan. (*Id.*) The proposed plan included the same definition of "Spouse" as the final plan. The proposed plan stated that a spouse "shall mean the surviving spouse of a Participant at the time of his death provided the Participant and such spouse were married at least one year prior to the earlier of the Participant's death or date of retirement." (*Id.*, at 9.) When the plan was finalized and adopted, President and Chief Executive Officer of Diebold, Robert W. Mahoney, sent copies of the proposed SPD and the SERP to eligible employees (ECF No. 18-5). Mr. Parr's signature was located at the end of the SERP, in his capacity as "SVP [Senior Vice President] and Treasurer." (*Id.*, at p. 30.)

Mr. Parr therefore knew of the plan's definition of spouse, and it cannot be said that he reasonably relied on the definition of spouse in the SPD. *Edwards*, 851 F.2d at 136 (Reliance on SPD language is appropriate where "unsophisticated lay employee" was not provided with a copy

of the plan). Furthermore, Plaintiff did not file materials on the administrative record showing that Mr. Parr did not have access to the plan. The basis of her claim is that the definition of a spouse in the SPD omits a portion of that contained in the plan, entitling her to the death benefits contained therein. However, while the omission in the SPD of the "to the earlier of" language may create potential for misinterpretation, it "does not, by negative implication, alter the terms of the plan itself." *Sprague v. GMC*, 133 F.3d 388, 401 (6th Cir. 1998) (citing *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 952 (8th Cir. 1994); *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 938 (5th Cir. 1993)). Therefore, *Edwards* is inapplicable where a party has access to the plan and the SPD, and the terms of the plan are unambiguous.

Furthermore, the SPD states that "[t]his booklet is a summary of the Supplemental Plan. The complete terms of the Plan are found in the Plan document. The final determination on all claims will be in accordance with the terms of the document." (SPD, ECF No. 18-6, at 13.) Mr. Parr and Plaintiff should not have relied on the SPD when its language advises that the Plan document controls final claim determination.

The court finds that on these facts, in light of Mr. Parr's knowledge of and access to plan language, Plaintiff is precluded from arguing that the SPD language alone entitles her to judgment as a matter of law. Accordingly, the court hereby denies Plaintiff's Motion for Summary Judgment.

### C. Judgment on the Administrative Record

#### 1. Standard

In an action claiming error by a plan administrator under ERISA, the district court's standard of review is *de novo* with respect to both the factual and legal determinations of the plan administrator. *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Rowan*

*v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir. 1997)). However, when the challenged benefit plan affords the plan administrator discretionary authority to construe terms of the plan and determine eligibility, a higher "arbitrary and capricious" standard of review is applied. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); accord *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). This standard is "highly deferential" to the findings of the plan administrator and is only applied where the grant of discretionary authority is "express." *Yeager*, 88 F.3d at 380. *See, e.g.*, *Killian*, 152 F.3d at 520 ("This standard 'is the least demanding form of judicial review of administrative action . . ."); *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991) ("the standard requires that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'").

The plan at issue in the instant case contained the following language:

> The Company shall be responsible for the general administration of the Plan and for carrying out the provisions thereof. The Company shall have any and all power and authority (*including discretion with respect to the exercise of that power and authority*) which shall be necessary, advisable, desirable or convenient to enable it to carry out its duties under the Plan. ...

(SERP, ECF No. 18-3 at 21) (emphasis added.) The court finds this to be a sufficient grant of express discretionary authority and accordingly reviews the record under the arbitrary and capricious standard. Therefore, the decision of the administrator will be upheld if it is "rational in light of the plan's provisions." *University Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (citing *Yeager*, 88 F.3d at 381 (6th Cir. 1996) (internal quotations and citation omitted)).

As general rules of contract interpretation apply in an ERISA context, the terms of the plan are interpreted according to their plain meaning. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556

(6th Cir. 1998); *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (plain language of ERISA plan should be given its literal and natural meaning). This includes giving effect to unambiguous terms of an ERISA plan. *Perez*, 150 F.3d at 556 (quoting *Lake*, 73 F.3d at 1379).

### 2. Legal Analysis

The plan administrator determined that the SPD language was not controlling in this case, that Plaintiff did not fall under the definition of "spouse" in the SERP, and Plaintiff was not entitled to a Post-Retirement Death Benefit. (Rutt Letter, ECF No. 18-2 at 2-3.) The court finds this determination to be correct. The definition of "spouse" contained in the SERP, on a plain reading, does not apply to Plaintiff. She was not married to Mr. Parr at the time of his retirement and is therefore not entitled to the death benefits as a spouse under the terms of the plan. (SERP, ECF No. 18-3 at 4.) As the court indicated above, when a plan participant has access to the plan and an SPD, he may not rely on inconsistent language in an SPD to avoid unfavorable but unambiguous language in the plan itself. In this case, Mr. Parr had access to both the plan language and the SPD. Tellingly, Plaintiff does not aver that she should have had access to the plan at the time of Mr. Parr's retirement, as such a claim would betray the fact that she was not then married to Mr. Parr and thereby not eligible for death benefits under the express terms of the plan.

The court concludes by noting that even if the SPD language did create a conflict, the plan administrator's position must be deferred to as if it was "rational in light of the plan's provisions." *Valeck*, 92 F. App'x at 273 (6th Cir. 2004) (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)). As Defendant states, the "Spouse" provision in the SERP creates a degree of certainty in terms of who will be eligible for SERP benefits, limiting the company's liability to an employee's spouse during the time of employment. (Def.'s Mot. for Judg. on the Admin. Record,

ECF No. 18.) Mr. Parr had access to this document. The court finds that Diebold clearly intended to limit its exposure to the payment of spousal benefits in the manner determined by the administrator.

### III. CONCLUSION

The court grants Defendant's Motion to Strike. (ECF No. 17.) The court denies Plaintiff's Motion for Summary Judgment. (ECF No. 14.) Furthermore, The court finds that the plan administrator did not come to an arbitrary and capricious decision and consequently grants Defendant's Motion for Judgment on the Administrative Record in favor of Defendant. (ECF No. 18.)

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

November 16, 2010